CORE, Appellant,

v.

The STATE of Ohio, Appellee.

[Cite as *Core v. Ohio*, 191 Ohio App.3d 651, 2010-Ohio-6292.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–192.

Decided Dec. 21, 2010.

---

652

Kravitz, Brown & Dortch, L.L.C., Paula Brown, and Richard Parsons, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellee.

———————

BROWN, Judge.

{¶ 1} This is an appeal by petitioner-appellant, Anthony W. Core, from a judgment of the Franklin County Court of Common Pleas, denying appellant's petition to contest reclassification.

{¶ 2} On September 19, 1997, appellant entered a plea of no contest in the California Superior Court of Orange County to one count of committing a lewd or lascivious act with a minor, in violation of Cal.Penal Code 288(a). Appellant was notified that he was required to register as a sex offender pursuant to Cal.Penal Code Section 290, California's Sex Offender Registration Act. In January 2004, appellant moved to Franklin County, Ohio, and subsequently registered with the Franklin County Sheriff's Department, pursuant to the provisions of R.C. Chapter 2950, Ohio's law governing the registration and classification of sex offenders. Appellant received a notice of registration duties from the Franklin County Sheriff's Department informing him that his classification under Ohio law was "sexually oriented offender" and that he was required to register annually for a period of ten years from the date of the initial out-of-state registration.

{¶ 3} In 2007, Ohio enacted Am.Sub.S.B. No. 10 ("S.B. No. 10"), Ohio's version of the Adam Walsh Act ("AWA"), which amended provisions of R.C. Chapter 2950. On November 30, 2007, appellant received a letter from the office of the Ohio Attorney General informing him that he had been reclassified as a "Tier II sex offender" under the provisions of S.B. No. 10 and that he would now be required to register with the local sheriff's office every 180 days for a period of 25 years. On January 25, 2008, appellant filed a petition to contest reclassification and the application of the AWA. The state subsequently filed a memorandum against the petition.

{¶ 4} On January 5, 2009, the trial court filed a decision denying in part appellant's petition to contest reclassification. In that decision, the court addressed the issue whether the California offense of committing a lewd or lascivious act with a minor, for which appellant was convicted in 1997, was "substantially equivalent" to the offense of gross sexual imposition under Ohio law for purposes of triggering Tier II registration obligations under S.B. No. 10. The trial court answered that question in the affirmative.

{¶ 5} The court permitted both sides to submit additional briefing before ruling on appellant's remaining constitutional challenges to S.B. No. 10. On January 30, 2009, the trial court conducted a hearing on the petition. On February 3, 2009, the trial court filed a judgment entry denying appellant's petition, rejecting all of his constitutional challenges to S.B. No. 10.

{¶ 6} On appeal, appellant sets forth the following seven assignments of error for this court's review:

First assignment of error: the trial court erred in holding that the California offense of lewd or lascivious act was "substantially equivalent," "virtually identical," or "substantially similar" to Ohio's gross sexual imposition.

Second assignment of error: The application of S.B. 10 to persons who committed their offense prior to the enactment of S.B. 10 violates the retroactivity clause of the Ohio Constitution, Article II, Section 28 of the Ohio Constitution, and the ex post facto clause of the United States Constitution as incorporated by the Due Process Clause.

Third assignment of error: The application of S.B. 10 violates the United States Constitution's prohibition against cruel and unusual punishments.

Fourth assignment of error: The trial court erred in finding that appellant's reclassification did not constitute impermissible multiple punishment under the Double Jeopardy Clauses of the United States and Ohio Constitutions.

Fifth assignment of error: The trial court erred in holding that the residency restrictions of S.B. 10 do not violate appellant's right to due process.

Sixth assignment of error: The trial court erred in finding that retroactive application of S.B. 10 does not violate procedural due process.

Seventh assignment of error: The trial court erred in finding that reclassification of appellant was not a violation of the Separation of Powers Doctrine.

{¶ 7} Under the first assignment of error, appellant contends the trial court erred in holding that the California offense of committing a lewd or lascivious act with a minor was substantially equivalent to the Ohio offense of gross sexual imposition. By way of background, in addition to raising various constitutional challenges to S.B. No. 10 in his petition to contest reclassification, appellant raised one nonconstitutional argument, i.e., that the California offense for which he was convicted was not "substantially equivalent" to any Ohio "sexually oriented offense." While appellant raised this issue primarily in the context of whether he could be reclassified under S.B. No. 10 as a Tier II offender, we note that appellant also asserted in his petition that although "he has been registering in the State of Ohio since January 2004, * * * [p]etitioner * * * takes the position that he was never subject to Ohio's registration requirements."

{¶ 8} R.C. Chapter 2950, Ohio's Sex Offender and Notification Act, "imposes a duty to register on a person who was convicted of or pleaded guilty to a sexually oriented offense in another jurisdiction if that person has a duty to register as a sex offender under the law of the other jurisdiction." *Miller v. Cordray*, 184 Ohio App.3d 754, 2009-Ohio-3617, 922 N.E.2d 973, ¶ 11. Pursuant to R.C. 2950.01(A)(11), a "[s]exually oriented offense" is defined to include "any existing or former * * * law of another state * * * that is or was substantially equivalent to" the offense of gross sexual imposition under R.C. 2907.05.

{¶ 9} R.C. 2907.05(A)(4) defines the offense of gross sexual imposition:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 10} Cal.Penal Code 288(a) defines the offense of lewd or lascivious acts involving children:

Except as provided in subdivision (i), any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

{¶ 11} Appellant contends that the trial court, in considering whether the offenses at issue are "substantially equivalent," was required to make an abstract elemental comparison of the California and Ohio statutes rather than engage in a fact-based approach. Appellant argues that such a comparison of the California crime of a lewd and lascivious act on a minor with Ohio's crime of gross sexual imposition ("GSI") shows that they are not substantially equivalent. More specifically, appellant maintains there are four differences between the two statutes, specifically, (1) the age of the victim, (2) the offender's knowledge/intent, (3) the spousal status of the victim, and (4) the area touched on the victim.

{¶ 12} The trial court, in considering appellant's elemental-comparison argument, held in part: "Employing a strict element by element match—when the legislative goal is to attain one national sex offender registry—would impose an enormous burden on government." The court found that the test to be applied was "not so exacting" as appellant advocated and that there was "no meaningful

basis to differentiate between a 'Lewd and Lascivious Act' in California and 'Gross´Sexual Imposition' committed in Ohio."

{¶ 13} Subsequent to the trial court's decision in the instant case, this court, in addressing a similar argument by an appellant with an out-of-state conviction, held: "By the phrase's plain and ordinary meaning, 'substantial equivalence' does not contemplate identical or even strict equivalence and presumes potential differences." *Miller*, 184 Ohio App.3d 754, 2009-Ohio-3617, 922 N.E.2d 973, at ¶ 15. Thus, this court rejected a "strict-or-identical equivalence standard." Id. at ¶ 14.

{¶ 14} One of appellant's contentions is that the Ohio and California statutes are not substantially equivalent because one element of Ohio's GSI statute is that the victim not be "the spouse of the offender," while California's statute pertaining to the offense of lewd or lascivious conduct with a minor does not contain the same requirement. In *Miller*, however, we rejected the contention that because an Illinois statute did not contain a nonspousal element, the statute was not substantially equivalent to Ohio's GSI statute. *Miller* at ¶ 15. This court reasoned that under both the Ohio and Illinois statutes, "it is a legal impossibility for a 13–year–old victim to be married," and thus "the fact that the Illinois statute does not contain a nonspousal requirement is not enough * * * to render it not substantially equivalent to the Ohio offense of GSI against a child under the age of 13." Id.

{¶ 15} Similarly, under California law, an unmarried minor may marry only with the written consent of one or both parents and a court order. See Cal.Fam.Code Section 302. Further, as noted in *Miller*, under Ohio law a minor is required to obtain the consent of a parent. *Miller* at ¶ 15, citing R.C. 3101.01(A). Based upon *Miller*, we do not find the absence of a nonspousal requirement under the California statute sufficient to dictate a determination that the two statutes at issue are not substantially equivalent.

{¶ 16} Appellant also contends that the Ohio GSI statute and the California statute prohibiting lewd and lascivious conduct contain disparate age elements, specifically, that the Ohio statute applies to a person less than 13 years of age, while the California statute applies to a child under the age of 14. We find appellant's argument unpersuasive.

{¶ 17} Here, the purpose of both the California and Ohio statutes is to deter offenders engaged in sexual conduct with people under a certain age, and we do not deem the one-year age difference as contrary to that purpose. *State v. Tayse*, 9th Dist. No. 23978, 2009-Ohio-1209, 2009 WL 692421, ¶ 33 (comparing Pennsylvania statute proscribing statutory sexual assault to Ohio's rape statute and holding that the "statutes need not be identical if the purpose is the same"). See also *Ex parte White* (Tex.Crim.App.2007), 211 S.W.3d 316, 318 (elements of

Delaware statute for unlawful sexual contact, prohibiting contact with another person "less than 16 years of age" was "substantially similar" to elements of Texas statute for indecency with a child "younger than 17 years").

{¶ 18} Appellant also challenges the trial court's finding that both statutes require proof of the same mens rea. However, appellant's contention that the mens rea with respect to touching under R.C. 2907.05(A)(4) is recklessness is not supported by Ohio law. See *State v. Turner*, 2d Dist. No. 22777, 2008-Ohio-6836, 2008 WL 5381956, ¶ 59, citing *Starcher v. Eberlin*, 7th Dist. No. 08 BE 19, 2008-Ohio-5042, 2008 WL 4416517, ¶ 16–17 (R.C. 2907.05(A)(4) requires a mens rea of " 'purposely,' not recklessness"); *State v. Ralston*, 9th Dist. No. 08CA009384, 2008-Ohio-6347, 2008 WL 5122127, ¶ 17 (a defendant is guilty of gross sexual imposition if he purposely compels the victim to submit to the sexual activity described under the statute).

{¶ 19} We also disagree with appellant's contention that knowledge (or "willfulness") of the victim's age is an element of the California law. See *People v. Olsen* (1984), 36 Cal.3d 638, 205 Cal.Rptr. 492, 685 P.2d 52 (a good-faith, reasonable mistake of age is not a defense to a charge of willfully committing lewd or lasciviousness conduct with a child under the age of 14 years). Further, this court has previously rejected the argument that recklessness is the required mental state with respect to the victim's age under Ohio's GSI statute. *Miller*, 184 Ohio App.3d 754, 2009-Ohio-3617, 922 N.E.2d 973, at ¶ 18 ("no precise culpable state of mind with respect to the age of the victim is required").

{¶ 20} Appellant's final contention is that Ohio's GSI statute limits touching to an erogenous zone, while California's statute does not. Pursuant to R.C. 2907.01(B), "sexual contact" is defined to mean "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶ 21} In addressing this argument, the trial court found in part that the Ohio and California statutes are substantially equivalent because both laws "contemplate sexual contact rather than penetration of the victim's body, or other features of more serious crimes." We agree. Arguably, under California law, a violation of Cal.Penal Code 288 would not require proof that the offender touched any particular part of the victim's body. See *People v. Martinez* (1995), 11 Cal.4th 434, 444, 45 Cal.Rptr.2d 905, 903 P.2d 1037 ("a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body"). However, even under Ohio law, "the legislature intended that body parts that are not traditionally viewed as erogenous zones, may, in some instances, be considered erogenous zones." *State v. Miesse* (Aug. 18, 2000), 2d Dist. No. 99–CA–74, 2000 WL 1162027 (rejecting argument that stomach was not an erogenous

zone because it was not among the body parts listed in R.C. 2907.01(B)). See also *State v. Ball*, 4th Dist. No. 07CA2, 2008-Ohio-337, 2008 WL 274794, ¶ 26 ("While the mouth is not specifically among the body parts listed in R.C. 2907.01, it may, under the facts of a particular case, be considered an erogenous zone").

{¶ 22} Upon review, we find no error in the trial court's determination that appellant's California conviction was for a crime substantially equivalent to GSI under Ohio law. Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶ 23} Appellant's remaining six assignments of error raise various constitutional challenges to S.B. No. 10. Following oral argument, this court entered an order staying this appeal pending resolution by the Supreme Court of Ohio of the constitutionality of the reclassification provisions of S.B. No. 10. The Supreme Court subsequently issued its decision in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, holding in paragraph three of the syllabus: "R.C. 2950.031 and 2950.032, which require the attorney general to reclassify sex offenders whose classifications have already been adjudicated by a court and made the subject of a final order, violate the separation-of-powers doctrine by requiring the opening of final judgments." The Supreme Court concluded that severance of those two statutory provisions was the appropriate remedy, and thus the court held: "R.C. 2950.031 and 2950.032 may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classifications and community-notification and registration orders imposed previously by judges are reinstated." Id. at ¶ 66.

{¶ 24} This court subsequently lifted the order of stay and permitted the parties to file supplemental briefing to address the potential impact of *Bodyke* on appellant's case. Both sides have submitted supplemental briefing, and we initially address the issue whether the holding in *Bodyke* is applicable to appellant's petition to contest reclassification in the present case.

{¶ 25} The state contends that appellant does not fit within the holding of *Bodyke*. Specifically, the state argues that appellant's Ohio classification arises by operation of law and that there is no separation-of-powers violation in the absence of a prior judicial classification under R.C. Chapter 2950.

{¶ 26} Appellant acknowledges in his supplemental brief that a judge of an Ohio common pleas court did not determine him to be a sexually oriented offender; instead, that classification was set forth in the notice he received from the county sheriff's department. Appellant contends, however, that the court in *Bodyke* would not have selected severance as a remedy had it intended to declare R.C. 2950.031 and 2950.032 unconstitutional only "as applied" (rather than

facially) to those offenders who had been previously adjudicated sex offenders by a judge in Ohio.

{¶ 27} In a recent decision, *State v. Hazlett*, 191 Ohio App.3d 105, 2010-Ohio-6119, 944 N.E.2d 1220, this court considered a case in which an appellant-offender was convicted in 1980 but never judicially classified as a sexual offender, i.e., the appellant's classification arose by operation of law. Under the facts of that case, the appellant received notification by the office of the Ohio Attorney General in 2007 that he would be reclassified as a Tier III offender pursuant to S.B. No. 10. In response, the appellant filed a petition to contest reclassification. The trial court subsequently rendered a decision denying the appellant's petition to contest reclassification.

{¶ 28} On appeal, this court in *Hazlett* at ¶ 10–12, in construing the holdings in *Bodyke* and *Chojnacki v. Cordray*, 126 Ohio St.3d 321, 2010-Ohio-3212, 933 N.E.2d 800, held:

Here, we are presented with a defendant whose sex-offender status prior to the enactment of S.B. 10 arose not by judicial determination but, instead, by operation of law. An argument has been made that *Bodyke* is not applicable to such sex offenders, and indeed two appellate districts have so held. *Green [v. State*, 1st Dist. No. C–090650, 2010-Ohio-4371, 2010 WL 3610203]; *Boswell v. State*, 12th Dist. No. CA2010–01–006, 2010-Ohio-3134, 2010 WL 2653379. *Green* and *Boswell* held that where there is no prior judicial order classifying a sex offender, reclassification by the attorney general under S.B. 10 does not violate the separation-of-powers doctrine under *Bodyke* because it does not require the opening of a final court order or a review by the executive branch of a past decision of the judicial branch. *Green*, syllabus; *Boswell*.

We agree that this is a conceivably correct interpretation of *Bodyke* and that *Bodyke*'s language appears to limit its separation-of-powers holding to judicially classified sex offenders and not those sex offenders classified by operation of law. However, the remedy of *Bodyke*, as later clarified and reaffirmed in *Chojnacki*, was *complete and total severance* of the provisions providing for the attorney general's authority to reclassify sex offenders. The severance makes no distinction between those classified judicially and those classified by operation of law. Moreover, after *Bodyke* was rendered, the Supreme Court was asked for clarification on this very issue, but declined to offer either reconsideration or clarification, which suggests the effect of severance is applicable to all sex offenders whether classified judicially or by operation of law.

Being a court of inferior jurisdiction to the Supreme Court of Ohio, we must follow its mandates. *State v. Ryan*, 10th Dist. No. 08AP–481, 2009-Ohio-3235, 2009 WL 1911863, ¶ 48. See also *State v. Land*, 3d Dist. No. 2–07–20, 2007-Ohio-6963, 2007 WL 4494776, ¶ 9; *State v. Withers*, 10th Dist. No. 08AP–39,

2008-Ohio-3175, 2008 WL 2553085, ¶ 13. While there is much debate over what the Supreme Court of Ohio may have meant or intended when it decided *Bodyke* and *Chojnacki*, we, as a court of inferior jurisdiction to that of the Supreme Court, are bound to follow what it did, which was sever as unconstitutional R.C. 2950.031 and 2950.032. Given that the statutory provisions authorizing the attorney general to reclassify sex offenders have been severed and excised from the Ohio Revised Code, we find the action taken by the Supreme Court in *Bodyke*, i.e., reinstating sex offenders to their sex-offender classifications as they existed prior to the implementation of the AWA, to be equally applicable here.

{¶ 29} Based upon this court's interpretation of *Bodyke* and *Chojnacki* in *Hazlett*, we conclude in the instant case that although appellant's prior classification (i.e., sexually oriented offender) arose by operation of law, appellant's "reclassification made under the severed statutes must be vacated and his prior sex-offender classification reinstated." *Hazlett*, 191 Ohio App.3d 105, 2010-Ohio-6119, 944 N.E.2d 1220, at ¶ 13. We therefore sustain appellant's seventh assignment of error, in which he asserts that his reclassification under S.B. No. 10 violates the separation-of-powers doctrine. In light of the foregoing, appellant's remaining assignments of error, all involving other constitutional challenges to S.B. No. 10, are rendered moot.

{¶ 30} Accordingly, appellant's first assignment of error is overruled, appellant's seventh assignment of error is sustained, and appellant's second, third, fourth, fifth, and sixth assignments of error are rendered moot. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this decision.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

McGRATH and CONNOR, JJ., concur.